UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No.  06-30029-MAP |
| | ) | |
| ALBERT CALVANESE, | ) | |
| Defendant | ) | |

MEMORANDUM AND ORDER WITH REGARD TO DEFENDANT'S
MOTIONS FOR RECONSIDERATION OF DETENTION ORDER
(Document Nos. 14 and 17)
March 5, 2007

NEIMAN, C.M.J.

Albert Calvanese ("Defendant") was named in an indictment dated November 14, 2006, charging him with making extortionate extensions of credit in violation of 18 U.S.C. § 892 (Count I) and using extortionate means to collect extensions of credit in violation of 18 U.S.C. § 894 (Count II).  The Government moved for detention pursuant to 18 U.S.C. § 3142(e) and (f), asserting that Defendant presented a risk of flight and a danger to the community.  (See Document No. 3.)  After a two hour hearing on December 20, 2006, the court ordered that Defendant be detained.  The court found

> that the weight of the evidence against Defendant is
> overwhelming, much of it based on recorded conversations.
> More particularly, the evidence provided at the detention
> hearing shows Defendant to resort quite readily to violence,
> to be involved in other loan sharking activities, to have been
> less than forthcoming with the court regarding his financial
> situation, and to have had ready access to weapons that
> were technically in either his wife's or mother's name, but

>were easily available for his use.  Moreover, in the court's estimation, there are no conditions or combination of conditions -- even though offered by Defendant -- which can reasonably guard against Defendant's flight or danger to the community.

(Order of Detention Pending Trial (Document No. 10).)

Defendant thereafter sought reconsideration of the court's detention order.  (See Document No. 14.)  After hearing further argument on January 29, 2007, the court asked the Government to submit, under seal if necessary, transcripts of those portions of Defendant's telephone conversations (while incarcerated) which were mentioned at the hearing, together with an affidavit regarding Mark McCarthy ("McCarthy"), an individual the Government describes as an essential witness and the target of Defendant's extortionate activities.  The court gave Defendant the opportunity to file a financial affidavit in support of his motion for reconsideration, together with any other documentation he deemed relevant to the proposed sureties.  Although Defendant has not provided a financial affidavit, the remaining documents have been provided by the parties, together with a second amended motion for reconsideration on Defendant's part.  (See Document No. 17.)

The court is now poised to rule on Defendant's motions.  In essence, the court remains convinced, as previously determined, that there are no conditions of release which will reasonably assure his appearance as required or, in particular, the safety of the community.

## I.  Bail Reform Act

Under 18 U.S.C. § 3142 ("The Bail Reform Act" or "the Act"), the judicial officer shall order that, pending trial, a defendant be (1) released on his own recognizance or

upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion; or (4) detained.  18 U.S.C. § 3142(a).  Under the Act, the judicial officer may detain a person pending trial only if, after a detention hearing held pursuant to 18 U.S.C. § 3142(f), the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142(b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).

The Supreme Court has cautioned that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  *United States v. Salerno*, 481 U.S. 739, 755 (1987).  For this reason, a defendant may be detained only if the judicial officer finds by (1) *clear and convincing evidence*, that the defendant is a danger to the community, or (2) *a preponderance of the evidence*, that the defendant poses a risk of flight.  *See* 18 U.S.C. § 3142(f); *United States v. Patriarca*, 948 F.2d 789, 792-93 (1st Cir. 1991); *United States v. Jackson*, 823 F.2d 4, 5 (2d Cir. 1987); *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986).  Furthermore, the judicial officer "may not impose a financial condition that results in the pretrial detention of the person."  18 U.S.C. § 3142(c).

The Bail Reform Act establishes a two-step procedure for making the determination that a defendant should be detained.  First, the Government is entitled to move for detention when a defendant has been charged with an offense enumerated in the Act for which Congress has determined that detention is warranted.  *See* 18 U.S.C. § 3142(f)(1).  Second, the judicial officer must determine whether any condition or

combination of conditions will adequately ensure the appearance of the defendant and the safety of the community against any danger posed by the defendant's pretrial release.  *See United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988).

In meeting its burden on the issue of whether "any condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of any other person and the community," the Government is aided by the statutory presumptions created by 18 U.S.C. § 3142(e).  Where the offense charged is one of the offenses enumerated in section 3142(f)(1), a rebuttable presumption is created by section 3142(e), that no condition or combination of conditions will reasonably assure the safety of the community if the judicial officer finds that: (1) the defendant has been convicted of a federal offense that is described in section 3142(f) or an offense under state law that would have been described in section 3142(f)(1) if federal jurisdiction had existed, (2) such offense was committed while the person was on release pending trial for a federal, state or local offense, and (3) a period of not more than five years has elapsed since the date of conviction or release from imprisonment for such offense.

The Government may invoke the same rebuttable presumption if the judicial officer finds probable cause to believe that the defendant committed an offense: (1) for which a maximum term of imprisonment of ten years or more is prescribed in (a) the Controlled Substances Act, (b) the Controlled Substances Import and Export Act, or (c) the Maritime Drug Enforcement Act; or (2) under 18 U.S.C. § 924(c).

In making the determination as to whether a defendant overcomes the statutory presumption of 18 U.S.C. § 3142(e), the judicial officer is compelled to consider the

following factors:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including --
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g). The Government has not invoked the rebuttable presumption in the instant matter.

### II. Finding of Facts and Discussion of Whether Detention is Warranted

The court makes the following factual findings and conclusions of law.

### A. Nature of Offense: § 3142(g)(1)

As described, Defendant has been charged with making extortionate extensions of credit and using extortionate means to collect that credit from McCarthy, the alleged debtor. The dates alleged in the indictment span 1997 to June of 2005. The Government indicates that Defendant faces a maximum sentence of twenty years and a guidelines sentence, if followed, of approximately eight years.

McCarthy, it should be noted, had previously been charged in a separate

indictment, together with other defendants, with numerous counts of wire fraud in connection with a "land flip" scheme. *See United States v. Innarelli, et al.*, Criminal Action No. 04-30046-MAP. McCarthy pleaded guilty to four of those counts on April 20, 2006. On November 22, 2006, District Judge Michael A. Ponsor sentenced McCarthy to thirty-three months in prison with a self-surrender date of December 29, 2006, later extended to March 5, 2007. On February 8, 2007, however, Judge Ponsor vacated the surrender date and set the matter down for re-sentencing on November 26, 2007. As was made evident during the course of the detention hearing in the present matter, McCarthy's re-sentencing is connected to his recent cooperation with the Government vis-a-vis Defendant.

### B.  The Weight of the Evidence: § 3142(g)(2)

In the court's estimation, the case against Defendant is strong, based as it is on recorded telephone messages, consensually-monitored audiotapes, and the active participation of a cooperating witness, McCarthy, from whom, the Government claims, Defendant was collecting extortionate loans for over a decade. The recordings, all of which are of recent vintage and parts of which were played during the detention hearing, include references to meetings between Defendant and McCarthy as well as Defendant's use of threats and violence.

### C.  History and Characteristics of Defendant: § 3142(g)(3)(A)

Defendant is forty-three years old and a graduate of Classical High School in Springfield. He is married to Laura Gramse, a dentist whose office is attached to the marital home. They have three young children. Defendant's parents live in Springfield and his siblings live in the Springfield area. Defendant claims to have been employed at

various restaurants in the past but concedes that he has not been employed for the last two years during which time he has been a "stay-at-home Dad."

Defendant has a modest criminal history dating back to 1980. His record includes possession of ammunition, possession of a firearm without a permit, knowingly receiving stolen property (all in 1980), and shoplifting (in 1988, 1989 and 1996). Defendant has also been charged with two motor vehicle violations (in 1988 and 2006) and disorderly conduct (in 2004), all of which were eventually dismissed after the payment of court costs. Defendant acknowledges that he has been on a Methadone maintenance program for the past year.

### D.  Probation Status of Defendant: § 3142(g)(3)(B)

It appears that the charged crimes were not committed while Defendant was on probationary or parole status.

### E.  Whether Defendant Poses a Risk of Flight: § 3142(e)

The court finds that the Government has demonstrated by a preponderance of the evidence that Defendant poses a risk of flight. To be sure, Defendant's ties to the community are, on the surface, strong; his entire family lives in the area. Moreover, as Defendant argues, his wife is willing to put up the marital home (in her name) as surety. In the court's estimation, however, Defendant's ties to the area have a shaky foundation. First, the strength of Defendant's relationship with his wife is somewhat questionable; the Government not only asserts that Defendant has a girlfriend (who was the subject of a subsequent telephone conversation between Defendant and his wife while he was incarcerated), but that, at the time law enforcement was searching for Defendant after the indictment, Defendant's wife indicated that she did not want him

back in the home.

Second, Defendant, knowing full well that he had been indicted, avoided arrest for at least a week before surrendering. Third, the court remains unaware of Defendant's full financial situation and, thus, whether he has the wherewithal to flee despite sureties offered by others. Defendant was given several opportunities to provide a financial statement and, despite representations that he would, has not done so.

In this regard, it should be noted that, as one of the conditions of his release Defendant has offered to post a $300,000 personal surety bond backed, apparently, by his own retirement account. The Government reports, however, that that account (in the amount of approximately $350,000) was seized on or about January 27, 2007. (See Seizure Warrant 07-1616-TSH (sealed).) Other accounts in the names of family members -- in which the Government asserts Defendant, although unnamed, actually has primary ownership -- were also seized. (See Seizure Warrants 07-1604-TSH through 07-1615-TSH (sealed).) Those accounts total approximately $750,000. It is perhaps for this reason that Defendant has declined to provide a financial statement to support the personal surety bond which he himself has offered. In any event, lacking information regarding Defendant's true financial worth and in light of the real possibility that similarly large sums are accessible to Defendant, the court can fairly assume that Defendant has the ability to finance his flight from this court's jurisdiction. *See Patriarca*, 948 F.2d at 795 (commenting on difficulty of a judicial officer to set a forfeiture amount without exploring a defendant's assets or net worth).

    F.  <u>Whether Defendant Poses a Risk to the Community:  § 3142(g)(4)</u>

The Government asserts that Defendant, if released, will pose a danger to the community.  The court fully agrees and finds that the Government has demonstrated that risk by clear and convincing evidence.

Of course, even in cases where there is the potential for danger, there may still be strict conditions of release which can serve as a reasonable guard against that risk. *See Patriarca*, 948 F.2d at 794.  *See also United States v. Tortora*, 922 F.2d 880, 884 (1st Cir. 1990) ("Undoubtedly, the safety of the community can be reasonably assured without being absolutely guaranteed.").  Here, Defendant suggests, those conditions include the posting of a surety bonds by his friends and family amounting to more than $820,000.  These sureties include property in the name of Defendant's wife on Wilbraham Road with an equity of $70,000 (*i.e.*, $500,000 appraised value less a $280,000 mortgage and a $150,000 line of credit); Defendant's parents' home on Pine Hill Road in Springfield with an appraised value and equity of $286,000; property of Defendant's brother-in-law in Ludlow, Massachusetts with an appraised value and equity of $215,000; and a $250,000 personal surety bond of Defendant's wife secured by $211,000 in IRA accounts and $43,000 in savings.  And, as described, Defendant has offered to post a $300,000 personal surety bond.

In addition, Defendant suggests that he be placed into the third party custody of his wife, be subject to electronic monitoring and drug testing, be prohibited from possessing or using any cellular telephones, pagers, modems, fax machines and internet online services, submit himself and his residence to searches by any authorized federal agent at any time, surrender his passport and not obtain a new one, avoid all contact with potential witnesses (to be set forth on a list provided by the Government),

not possess any firearms, and submit all telephone lines at his residence to a pen register device, the expenses of which are to be incurred by him. More to the point, Defendant argues, the Government has not shown that there are no conditions or combination of conditions which will reasonably ensure his appearance and the safety of the community.

Unfortunately for Defendant, the court does not agree that the suggested conditions can reasonably assure the safety of the community or, for that matter, Defendant's appearance in court when required. First, the circumstances surrounding the charges themselves make clear that Defendant poses a continuing danger to the community, namely, ongoing extortionate activities. *See United States v. Simone*, 317 F.Supp. 2d 38, 42 (D.Mass 2004) (extortionate extensions of credit is a crime of violence within the meaning of 18 U.S.C. § 3142(f)(1)(A)). To be sure, the present indictment identifies only one victim, but, as the Government's affidavit (filed under seal at the court's direction) indicates, there are other individuals who are also victims of Defendant's extortion and who, it turns out, are quite afraid of him.

Second, as described, the evidence demonstrates that Defendant is unconstrained in his use of violence, information which was probably not known to the various individuals who wrote to the court in support of Defendant's release. The recordings presented at the detention hearing are, in a word, chilling. They contain vile language, threats of violence by Defendant, and the sounds of violence inflicted upon McCarthy. McCarthy, the Government also notes, described one incident in June of 2005 when he was assaulted by Defendant while Defendant held one of his children in his arms. Somewhat eerily, Defendant's wife is reported to have asked, when agents

inquired of his whereabouts when seeking to arrest him, whether he had killed somebody.

Third, McCarthy, in the court's opinion, is not out of danger. Defendant's assertions to the contrary, McCarthy remains free while awaiting re-sentencing and, although he has been relocated, is not in the Witness Protection Program and has family in the area. In this regard, the court notes that Defendant's anger at McCarthy remains unabated. Transcripts of telephone conversations between Defendant and his wife (while Defendant has been incarcerated) reveal what can only be described as his obsession with McCarthy. For example, Defendant voices his hope that McCarthy dies and that McCarthy's kids die as well (even if they are "innocent"). These expletive-laden conversations, in the court's opinion, go beyond the mere fulminations of an angry man. They represent an undercurrent of violence to which McCarthy, let alone the community at large, ought not be exposed.

Fourth, the Government has shown that Defendant had a penchant for, and access to, firearms, although they ostensibly remained in the names of Defendant's wife and mother. Given the evidence proffered at the detention hearing, the court has no reason to believe that either one of these women is a gun enthusiast; for example, the Government described how Defendant's mother -- when confronted with a Tech 9 machine gun found in a closet in a refurbished basement in her home where Defendant often lived -- stated she doesn't even "like guns." Nor can the court conceive why Defendant's mother would need the bulletproof vest found in her home. Finally, the vest and firearms hardly sound like the workaday tools of a "stay-at-home Dad."

In sum, while the conditions offered by Defendant are no doubt stringent,

Defendant's violence would be practically impossible to constrain were he released. Even the knowledge that his telephone conversations were monitored could not dampen his threats against McCarthy. And his wife, into whose third party custody he asks to be placed, had little effect on Defendant's demeanor during the course of these conversations. Indeed, for whatever reason, she describes to Defendant during the course of their conversations how she went by McCarthy's house to see if it was still occupied. Finally, given the fact that Defendant himself can offer no financial surety of his own, the court has no reason to believe that the sureties of others -- even if the source of those funds were explored in accord with *United States v. Nebbia*, 357 F.2d 303 (2d. Cir. 1966) -- would dampen Defendant's violent inclinations.

### III. CONCLUSION

For the reasons stated and in light of all the circumstances, Defendant's motions for reconsideration of the court's detention order are DENIED.

IT IS SO ORDERED.

DATED: March 5, 2007

                                                      /s/ Kenneth P. Neiman
                                                      KENNETH P. NEIMAN
                                                      Chief Magistrate Judge